SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 683-4788 – telephone
(702) 922-3851 – facsimile

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven*
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
*Staff Attorney at Righthaven*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>MATT DRUDGE, an individual; and DRUDGEREPORTARCHIVES.COM, an entity of unknown origin and nature,<br><br>Defendants. | Case No.: 2:10-cv-02135<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Righthaven LLC ("Righthaven") complains as follows against Matt Drudge ("Mr. Drudge") and DrudgeReportArchives.com ("DrudgeReportArchives"; collectively with Mr. Drudge known herein as the "Defendants") on information and belief:

1

## NATURE OF ACTION

1. This is an action for copyright infringement pursuant to 17 U.S.C. § 501.

## PARTIES

2. Righthaven is, and has been at all times relevant to this lawsuit, a Nevada limited-liability company with its principal place of business in Nevada.

3. Righthaven is, and has been at all times relevant to this lawsuit, in good standing with the Nevada Secretary of State.

4. Mr. Drudge is, and has been at all times relevant to this lawsuit, identified by the current registrar, Network Solutions, LLC ("Network Solutions"), as the registrant, administrative contact, and technical contact for the Internet domain found at <drudgereport.com> (the "Drudge Report Domain").

5. At all times relevant to this lawsuit, Mr. Drudge has maintained and maintains direct responsibility for the selection and display of the content accessible through the Drudge Report Domain (said content accessible through the Drudge Report Domain known herein as the "Drudge Report Website").

6. DrudgeReportArchives is, and has been at all times relevant to this lawsuit, the self-proclaimed owner of the copyright(s) in the work(s) posted as part of the content accessible through the Internet domain found at <drudgereportarchives.com> (the "Drudge Archives Domain"; said content accessible through the Drudge Archives Domain known herein as the "Drudge Archives Website"), as evidenced by a copyright notice displayed on the Drudge Archives Website: "Copyright © 2010 DrudgeReportArchives.com.  All Rights Reserved."

7. DrudgeReportArchives is, and has been at all times relevant to this lawsuit, an entity of unknown origin and nature.

8. Attempts to find evidence of the formal organizational status in the respective Secretary of State offices of Delaware, California, Illinois, New York, Texas, Tennessee, Nevada

2

and Florida demonstrate that, at least with respect to these states, DrudgeReportArchives is not a formally organized business entity.

9. At all times relevant to this lawsuit, Mr. Drudge has been and is a direct financial beneficiary of the Drudge Archives Website.

10. At all times relevant to this lawsuit, Mr. Drudge, on at least a daily basis, has maintained and maintains, full editorial control over the electronic content (including, without limitation, all embedded hyperlinks and interactive features) posted and/or displayed on the Drudge Report Website.

11. At all times relevant to this lawsuit, DrudgeReportArchives has displayed and/or archived, and continues to display and/or archive, via the Drudge Archives Website, all of the electronic content and embedded hyperlinks originally posted and/or displayed by Mr. Drudge on the Drudge Report Website.

12. At all times relevant to this lawsuit, Mr. Drudge has permitted and permits the electronic content (including, without limitation, all embedded hyperlinks and interactive features) ultimately posted and/or displayed on the Drudge Archives Website.

13. At all times relevant to this lawsuit, Mr. Drudge has been and is a licensor of the electronic content (including, without limitation, all embedded hyperlinks and interactive features) posted and/or displayed on the Drudge Report Website.

14. At all times relevant to this lawsuit, DrudgeReportArchives has been and is a licensee of the electronic content (including, without limitation, all embedded hyperlinks and interactive features) that is posted and/or displayed on the Drudge Report Website.

15. At all times relevant to this lawsuit, Mr. Drudge and DrudgeReportArchives have engaged, and continue to engage, in an embedded hyperlink relationship.

16. At all times relevant to this lawsuit, DrudgeReportArchives has been and is acting as an agent of Mr. Drudge with respect to the electronic content (including, without limitation, all embedded hyperlinks and interactive features) posted and/or displayed by DrudgeReportArchives on the Drudge Archives Website.

# JURISDICTION

17. This Court has original subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

18. Righthaven is the owner of the copyright in the illustration entitled: "Transportation Security Administration agents perform enhanced pat-downs" (the "Work"), attached hereto as Exhibit 1.

19. The Defendants willfully copied the Work on an unauthorized basis.

20. On or about November 18, 2010, Mr. Drudge displayed an unauthorized reproduction of the Work, attached hereto as Exhibit 2, on the Drudge Report Website (the "Drudge Report Infringement").

21. On or about November 18, 2010, the Drudge Report Infringement, as publicly displayed on the Drudge Report Website, was accessible in Nevada.

22. On or about November 18, 2010, the Drudge Report Infringement occurred in Nevada.

23. Mr. Drudge gained a financial benefit as a direct result of the unauthorized display of the Drudge Report Infringement on the Drudge Report Website.

24. The Drudge Report Website is a nationally renowned, interactive website that attracts Internet users and viewers across the country, including, without limitation, users and viewers based in Nevada.

25. The Drudge Report Website is a nationally renowned, interactive website that targets Internet users and viewers across the country, including, without limitation, users and viewers based in Nevada.

26. The Drudge Report Website contains an embedded hyperlink entitled: "VEGAS CONFIDENTIAL," linking directly to a section of the Las Vegas *Review-Journal* website.

27. The Drudge Report Website is an interactive website that targets Nevada-based advertisers, and said Nevada-based advertisers are specifically interested in attracting and gaining Nevada-based customers and clientele.

28. The Drudge Report Website is not a passive website; the Drudge Report Website is an interactive website that contains Nevada-centric advertisements designed to specifically target and appeal to Nevada viewers.

29. The Drudge Archives Website is not a passive website; the Drudge Archives Website is an interactive website that contains Nevada-centric advertisements designed to specifically target and appeal to Nevada viewers.

30. On or about November 18, 2010, the Defendants displayed, and continue to display, an unauthorized reproduction of the Work, attached hereto as Exhibit 3, on the Drudge Archives Website (the "Drudge Archives Infringement").

31. At all times relevant to this lawsuit, the Drudge Archives Infringement, as publicly displayed on the Drudge Archives Website, was and is accessible in Nevada.

32. At all times relevant to this lawsuit, the Drudge Archives Infringement occurred, and continues to occur, in Nevada.

33. The Defendants gained, and continue to gain, a financial benefit as a direct result of the display of the Drudge Archives Infringement on the Drudge Archives Website.

34. The Defendants' display of the Drudge Archives Infringement on the Drudge Archives Website is the direct result of the Defendants' licensor-licensee relationship.

35. The Defendants' display of the Drudge Archives Infringement on the Drudge Archives Website is the direct result of the Defendants' embedded hyperlink relationship.

36. The Defendants' display of the Drudge Archives Infringement on the Drudge Archives Website is the direct result of the Defendants' agency relationship.

37. The Defendants' display of the Drudge Archives Infringement on the Drudge Archives Website is the direct result of Mr. Drudge's preceding display of the Drudge Report Infringement on the Drudge Report Website.

38. At all times relevant to this lawsuit, Mr. Drudge knew that the Work was neither owned, nor originally published, by the Defendants.

39. At all times relevant to this lawsuit, DrudgeReportArchives knew that the Work was neither owned, nor originally published, by the Defendants.

40.     At all times relevant to this lawsuit, Mr. Drudge knew that the Defendants did not have authorization to reproduce the Work in any capacity.

41.     At all times relevant to this lawsuit, DrudgeReportArchives knew that the Defendants did not have authorization to reproduce the Work in any capacity.

42.     At all times relevant to this lawsuit, the Drudge Report Website has displayed and displays an embedded hyperlink entitled: "DRUDGE ARCHIVES," linking directly to the Drudge Archives Website.

43.     At all times relevant to this lawsuit, the Drudge Archives Website has displayed and displays an embedded hyperlink entitled: "Today's DrudgeReport.com," linking directly to the Drudge Report Website.

44.     According to the Drudge Archives Website, the Drudge Archives Website began archiving the electronic content and embedded hyperlinks originally posted and/or displayed on the Drudge Report Website on or about November 18, 2001.

45.     The Drudge Archives Website states that "[t]he archives take a snapshot of the DrudgeReport.com every 2 minutes 24/7."

46.     According to the Drudge Archives Website, the Drudge Archives Website contains an archive of "Matt Drudge's special reports."

47.     According to the Drudge Archives Website, the Drudge Archives Website contains an archive of "[e]xclusive documents posted on DrudgeReport.com" and "[e]xclusive photos posted on DrudgeReport.com."

48.     At all times relevant to this lawsuit, the Drudge Archives Website is an interactive website that has displayed and displays an embedded hyperlink entitled: "Drudge's Book: Drudge Manifesto," which directly enables users and viewers of the Drudge Archives Website to purchase Mr. Drudge's book, *Drudge Manifesto*, from <amazon.com>.

49.     At all times relevant to this lawsuit, the Drudge Archives Website is an interactive website that has displayed and displays an embedded hyperlink entitled: "Drudge's e-mail: drudge@drudgereport.com," which directly enables users of the Drudge Archives Website to communicate with Mr. Drudge via electronic mail.

50. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, the Drudge Report Website – an interactive website containing Nevada-centric advertisements and Nevada-specific content – is accessible to Nevada-based Internet users and viewers, and such contacts have been in existence at least in excess of ten years.

51. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, the Drudge Report Website is an interactive website that provides an option for Nevada residents to "SEND NEWS TIPS TO DRUDGE," wherein information can be electronically submitted by Nevada residents directly to Mr. Drudge.

52. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, the Drudge Report Website is an interactive website that provides an option for Nevada residents to "EMAIL: DRUDGE@DRUDGEREPORT.COM."

53. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, the Drudge Report Website is an interactive website that provides an option for Nevada residents to "BE SEEN! RUN ADS ON DRUDGE REPORT."

54. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, Mr. Drudge posted and posts, on the Drudge Report Website, advertisements of specific interest to Nevada residents for "Blue Man Group Las Vegas."

55. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, Mr. Drudge posted and posts, on the Drudge Report Website, advertisements of specific interest to Nevada residents for Nevada-based personal injury attorneys.

56. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, Mr. Drudge posted and posts, on the Drudge Report Website, advertisements of specific interest to Nevada residents for the "Best Places in Las Vegas . . . best local deals."

57. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, Mr. Drudge regularly posted and posts, on the Drudge Report Website, embedded hyperlinks linking to news articles and editorials of specific interest to Nevada residents concerning, without limitation, Nevada-based politicians, Nevada election information, Nevada economic issues, Nevada-based criminal activity, prominent Nevada-based attractions, Nevada

weather, and notable events occurring in Nevada, and such contacts have been in existence at least in excess of five years.

58. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, the Drudge Report Website receives approximately 139,133 unique views a month from Internet users located in Nevada, according to the Internet audience measurement data available via <quantcast.com>.

59. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, according to the Nevada Secretary of State Business Entity database, the business entity "Drudge Report, Inc." was previously incorporated in Nevada as a Nevada domestic corporation, and said entity has not since been incorporated in any state other than Nevada.

60. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, the last known *situs* of corporation or organization for any entity owned by Mr. Drudge is in Nevada.

61. Mr. Drudge's contacts with Nevada are continuous and systematic because, in part, Mr. Drudge, via the Drudge Report Website, is, and has been at least in excess of five years, a serial poster of electronic content (or embedded hyperlinks linking directly to said content) and advertisements specifically concerning Nevada and of specific interest to Nevada residents.

62. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Drudge Archives Website is an interactive website that is accessible to Nevada residents, and such contacts have been in existence at least in excess of nine years.

63. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based foreclosure, bankruptcy, and loan modification attorneys.

64. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Activities."

65. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Vegas Restaurant Coupons."

66. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Video."

67. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based medical providers.

68. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Las Vegas-based sightseeing tours.

69. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Coupons."

70. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Deals."

71. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for the "University of Southern Nevada College of Dental Medicine."

72. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Show Discounts."

73. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based labor attorneys.

74. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based bail bonds agencies.

75. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for prominent Nevada-based resort hotels located on the Las Vegas Strip.

76. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Hotel Specials."

77. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based personal injury attorneys.

78. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based dental care providers.

79. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Las Vegas Dining Deals."

80. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for promotions offering "Vegas at 90% off."

81. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based sign-making companies.

82. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based wedding chapels.

83. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for "Daily Deals Las Vegas."

84. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants posted and post, on the Drudge Archives Website, advertisements of specific interest to Nevada residents for Nevada-based skin disease treatment centers.

85. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants regularly posted and post, on the Drudge Archives Website, embedded hyperlinks linking to news articles and editorials of specific interest to Nevada residents concerning, without limitation, Nevada-based politicians, Nevada election information, Nevada economic issues, Nevada-based criminal activity, prominent Nevada-based attractions, Nevada weather, and notable events occurring in Nevada, and such contacts have been in existence at least in excess of five years.

86. The Defendants' contacts with Nevada are continuous and systematic because, in part, the Defendants, via the Drudge Archives Website, are, and have been at all times relevant to this lawsuit, serial posters of electronic content (and/or embedded hyperlinks linking directly to said content) and advertisements specifically concerning Nevada and of specific interest to Nevada residents.

87. While the Drudge Archive Website has posted an attempt at a Digital Millennium Copyright Act ("DMCA") infringement notice, there is no corresponding copyright registration with the United States Copyright Office ("USCO") identifying the Drudge Archive Website as a DMCA-compliant Online Service Provider ("OSP") in accordance with 17 U.S.C. § 512(c)(2).

88. The attempted DMCA notice posted on the Drudge Archives Website does not identify an agent designated to receive notices of claimed infringement.

89. In order to be compliant with the DMCA and afforded the protections associated therewith, an OSP must: (1) post a DMCA notice on the subject website identifying an agent designated to receive notifications of claimed infringement, and (2) provide said information to

the USCO for listing with the USCO's Directory of Service Provider Agents for Notification of Claims of Infringement, found at <copyright.gov/onlinesp/list/a_agents.html>.

90. As DrudgeReportArchives, an entity of unknown origin and nature, has failed to designate an agent to receive notifications of claimed infringement, and as the Drudge Archive Website claims that Mr. Drudge neither owns nor operates the Drudge Archive Website, there is no effective, DMCA-compliant means of communicating notifications of claimed infringement to DrudgeReportArchives arising from copyright infringements found on the Drudge Archive Website.

91. The Drudge Report Website contains no DMCA notice.

92. While the Drudge Archives Website is accessible through the Drudge Report Website, there is no indication that the non-compliant DMCA notice posted on the Drudge Archives Website is applicable to the Drudge Report Website.

93. Neither the Drudge Report Website nor Mr. Drudge, as owner of the Drudge Report Website, is listed with the USCO's Directory of Service Provider Agents for Notification of Claims of Infringement.

94. The Drudge Report Website is not compliant with Section 512(c)(2) of the DMCA.

95. The Drudge Archives Website is not compliant with Section 512(c)(2) of the DMCA.

**VENUE**

96. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim for relief are situated in Nevada.

97. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. § 1400 (a), because the Defendants are subject to personal jurisdiction in Nevada.

**FACTS**

98. The Work constitutes copyrightable subject matter, pursuant to 17 U.S.C. § 102(a)(5).

99. Righthaven is the owner of the copyright in and to the Work.

100. The Work was originally published on or about November 18, 2010.

101. On December 8, 2010, the USCO received Righthaven's official submittal for the registration to the Work, including the application, the deposit copy, and the registration fee (the "Complete Application"), Service Request No. 1-527285302, and attached hereto as Exhibit 4 is the official USCO application submittal for the Work depicting the occurrence of the Complete Application.

102. On or about November 18, 2010, Mr. Drudge displayed the Drudge Report Infringement on the Drudge Report Website.

103. On or about November 18, 2010, the Defendants displayed, and continue to display, the Drudge Archives Infringement on the Drudge Archives Website.

104. The Defendants did not seek permission, in any manner, to reproduce, display, or otherwise exploit the Work.

105. The Defendants were not granted permission, in any manner, to reproduce, display, or otherwise exploit the Work.

**FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT OF THE WORK DISPLAYED ON THE DRUDGE REPORT WEBSITE**

**(as to Defendant Matt Drudge, only)**

106. Righthaven repeats and realleges the allegations set forth in Paragraphs 1 through 105 above.

107. Righthaven holds the exclusive right to reproduce the Work, pursuant to 17 U.S.C. § 106(1).

108. Righthaven holds the exclusive right to prepare derivative works based upon the Work, pursuant to 17 U.S.C. § 106(2).

109. Righthaven holds the exclusive right to distribute copies of the Work, pursuant to 17 U.S.C. § 106(3).

110. Righthaven holds the exclusive right to publicly display the Work, pursuant to 17 U.S.C. § 106(5).

111. Mr. Drudge reproduced the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(1).

112. Mr. Drudge created an unauthorized derivative of the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(2).

113. Mr. Drudge distributed an unauthorized reproduction of the Work on the Drudge Report Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(3).

114. Mr. Drudge publicly displayed an unauthorized reproduction of the Work on the Drudge Report Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(5).

115. Mr. Drudge has willfully engaged in the copyright infringement of the Work, via the Drudge Report Website.

116. Mr. Drudge's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Righthaven in an amount Righthaven cannot ascertain, leaving Righthaven with no adequate remedy at law.

117. Unless Mr. Drudge is preliminarily and permanently enjoined from further or additional infringement of the Work, Righthaven will be irreparably harmed, and Righthaven is thus entitled to preliminary and permanent injunctive relief against further or additional infringement by Mr. Drudge of the Work, pursuant to 17 U.S.C. § 502.

# **SECOND CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT OF THE WORK DISPLAYED ON THE DRUDGE ARCHIVES WEBSITE**

**(as to all Defendants)**

118. Righthaven repeats and realleges the allegations set forth in Paragraphs 1 through 117 above.

119. Righthaven holds the exclusive right to reproduce the Work, pursuant to 17 U.S.C. § 106(1).

120. Righthaven holds the exclusive right to prepare derivative works based upon the Work, pursuant to 17 U.S.C. § 106(2).

121. Righthaven holds the exclusive right to distribute copies of the Work, pursuant to 17 U.S.C. § 106(3).

122. Righthaven holds the exclusive right to publicly display the Work, pursuant to 17 U.S.C. § 106(5).

123. The Defendants reproduced the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(1).

124. The Defendants created an unauthorized derivative of the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(2).

125. The Defendants distributed, and continue to distribute, an unauthorized reproduction of the Work on the Drudge Archives Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(3).

126. The Defendants publicly displayed, and continue to publicly display, an unauthorized reproduction of the Work on the Drudge Archives Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(5).

127. Mr. Drudge has willfully engaged in the copyright infringement of the Work, via the Drudge Archives Website.

128. DrudgeReportArchives has willfully engaged in the copyright infringement of the Work, via the Drudge Archives Website.

129.    The Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Righthaven in an amount Righthaven cannot ascertain, leaving Righthaven with no adequate remedy at law.

130.    Unless the Defendants are preliminarily and permanently enjoined from further or additional infringement of the Work, Righthaven will be irreparably harmed, and Righthaven is thus entitled to preliminary and permanent injunctive relief against further or additional infringement by the Defendants of the Work, pursuant to 17 U.S.C. § 502.

## PRAYER FOR RELIEF

Righthaven requests that this Court grant Righthaven's claim for relief herein as follows:

1.    Preliminarily and permanently enjoin and restrain the Defendants, and the Defendants' officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under the Defendants, from directly or indirectly infringing the Work by reproducing the Work, preparing derivative works based on the Work, distributing the Work to the public, and/or displaying the Work, or ordering, directing, participating in, or assisting in any such activity;

2.    Direct the Defendants to preserve, retain, and deliver to Righthaven in hard copies or electronic copies:

    a.    All evidence and documentation relating in any way to the Defendants' use of the Work, in any form, including, without limitation, all such evidence and documentation relating to the Drudge Report Website and/or the Drudge Archives Website;

    b.    All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with whom the Defendants have communicated regarding the Defendants' use of the Work; and

    c.    All financial evidence and documentation relating to the Defendants' use of the Work;

      3.      Direct Network Solutions, and any successor domain name registrar for the Drudge Report Domain, to lock the Drudge Report Domain and transfer control of the Drudge Report Domain to Righthaven;

      4.      Direct GoDaddy.com, Inc., the current registrar for the Drudge Archives Domain, and any successor domain name registrar for the Drudge Archives Domain, to lock the Drudge Archives Domain and transfer control of the Drudge Archives Domain to Righthaven;

      5.      Award Righthaven statutory damages for the willful infringement of the Work, pursuant to 17 U.S.C. § 504(c);

      6.      Award Righthaven costs, disbursements, and attorneys' fees incurred by Righthaven in bringing this action, pursuant to 17 U.S.C. § 505;

      7.      Award Righthaven pre- and post-judgment interest in accordance with applicable law; and

      8.      Grant Righthaven such other relief as this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Righthaven requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this eighth day of December, 2010.

          SHAWN A. MANGANO, LTD.

          By: /s/ Shawn A. Mangano
          SHAWN A. MANGANO, ESQ.
          Nevada Bar No. 6730
          9960 West Cheyenne Avenue, Suite 170
          Las Vegas, Nevada 89129-7701

          J. CHARLES COONS, ESQ.
          Nevada Bar No. 10553
          JOSEPH C. CHU, ESQ.
          Nevada Bar No. 11082
          Righthaven LLC
          9960 West Cheyenne Avenue, Suite 210
          Las Vegas, Nevada 89129-7701

          *Attorneys for Plaintiff Righthaven LLC*